ERIC GRANT
United States Attorney
CHARLES CAMPBELL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

Dec 01, 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-0274 WBS |
|---|---|
| Plaintiff, | 18 U.S.C. § 1341 – Mail Fraud |
| v. | |
| BRANDON MICHAEL GOUR, | |
| Defendant. | |

I N F O R M A T I O N

The United States Attorney charges:

BRANDON MICHAEL GOUR,

defendant herein, as follows:

INTRODUCTION

1.  At all times material, in the State and Eastern District of California, and elsewhere, Defendant GOUR and others known and unknown to the United States Attorney's Office engaged in a material scheme and artifice to defraud, with the purpose of obtaining money from the State of California and the United States by submitting fraudulent pandemic-related unemployment insurance claims.

///

///

2. At all times material:

*Federal and State Unemployment Insurance*

3. Unemployment insurance (UI) was a state-federal program that provided monetary benefits to eligible lawful workers. Although state workforce agencies (SWAs) administered their respective UI programs, they were required to do so in accordance with federal laws and regulations. UI payments ("benefits") were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits could be paid. Generally, UI weekly benefit amounts were based on a percentage of earnings over a base period. In the State of California, the Employment Development Department (EDD) administered the UI program, which was based in Sacramento, California.

4. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law. It expanded states' ability to provide assistance to many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits. The CARES Act provided three new temporary UI programs: Pandemic Unemployment Assistance (PUA); Pandemic Emergency Unemployment Compensation (PEUC); and Federal Pandemic Unemployment Compensation (FPUC).

5. The first program, PUA, initially provided for up to 39 weeks of benefits to individuals who were: (1) self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act; and (2) unemployed, partially unemployed, unable to work, or unavailable to work due to COVID-19 related reasons. Coverage included individuals who had exhausted all rights to regular UI or extended benefits under state or federal law or PEUC. Business owners, self-employed workers, independent contractors, or gig workers could qualify for PUA benefits administered by the California EDD if they previously performed such work in California and were unemployed, partially unemployed, unable to work, or unavailable to work due to COVID-19. PUA claimants were required to answer specific questions to establish their eligibility for PUA benefits, including providing their name, Social Security Number (SSN), and mailing address and self-certifying that they met one of the COVID-19 related reasons for

being unemployed, partially unemployed, or unable or unavailable to work. Initially, the eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

6. The second program, PEUC, initially provided for a higher average weekly benefit amount for individuals who had exhausted regular UI under state or federal law, had no rights to regular UI under any other state or federal law, were not receiving UI under the UI laws of Canada, and were able to work, available for work, and actively seeking work. The eligible timeframe to receive PEUC was from the weeks of unemployment beginning after the respective state had an established agreement with the federal government through December 31, 2020. The earliest eligible date was April 5, 2020.

7. The third program, FPUC, provided individuals who were collecting regular UI, PEUC, PUA, and several other forms of UC with an additional $600 per week. The eligible timeframe to receive FPUC was from the week of unemployment beginning after the respective state had an established agreement with the federal government through July 31, 2020. The earliest eligible date was April 5, 2020.

8. Regardless of which of the three programs described above was involved (that is, PUA, PEUC, or FPUC), UI benefits were distributed to program participants by the California EDD. These funds were received by the EDD from the United States Department of the Treasury.

9. As a result of the ongoing COVID-19 pandemic, the PUA, PEUC, and FPUC benefits were extended through other Federal or State Legislation to two additional benefit programs. The Continued Assistance Act (CAA) added an additional 11 weeks of PUA, PEUC, FPUC benefit payments from December 27, 2020, through March 13, 2021. The American Rescue Plan Act (ARPA) added an additional 25 weeks of PUA, PEUC, and FPUC benefit payments from March 14, 2021, through September 4, 2021.

*California's Unemployment Insurance Program*

10. In California, UI claims were commonly filed online through the EDD website, and this was typically accomplished using an electronic device that could access the Internet. When an individual filed an online UI claim, EDD automatically maintained certain information regarding the filing of the claim. This information included the date and time the claim was submitted, the name of the person for

INFORMATION                                3

whom the claim was filed, and the IP address of the device, or ISP account, that was used to file the claim.

11. UI claimants were required to answer various questions to establish their eligibility for UI benefits, including providing, for example, their name, SSN, and mailing address. The claimants were also required to identify a qualifying occupational status and/or COVID-19 related reason for being out of work.

12. After EDD accepted a UI claim, EDD typically deposited UI funds to an Electronic Benefit Payment (EBP) debit card administered by Bank of America (BofA), which claimants could use to withdraw cash and pay for their expenses. The debit card was sent via the U.S. Postal Service to the claimant at the address the claimant provided in the UI claim. Claimants could activate their debit card over the phone or online.

13. When receiving regular UI benefits, claimants were typically required to complete a Continued Claim Form (DE 4581) and certify every two weeks, under penalty of perjury, that they remained unemployed and eligible to receive UI benefits. EDD authorized and deposited payment to the debit card after it received the Continued Claim Form.

14. For the period of February 9, 2020, through September 5, 2020, the certification which applicants were required to acknowledge in order to submit the DE 4581 stated:

> *"I have read and understood each of the questions, and I have reviewed and agree with the answers to each of the questions I am submitting through this automated system. I certify that each of the answers is true and correct for this certification period. I know the law provides penalties if I make false statements or withhold facts to receive benefits. I declare under penalty of perjury that I am a U.S. Citizen or National; or an Alien in satisfactory immigration status and permitted to work by the United States Citizenship and Immigration Service. I understand when submitting my request for benefits my submission is considered the same as my signature".*

15. For the period of September 6, 2020, through September 4, 2021, the certification which applicants were required to acknowledge in order to submit the DE 4581 stated:

> *"I declare under penalty of perjury that the information I have provided, including the reason I am unemployed due to the COVID-19 public health emergency, is true and correct to the best of*

*my knowledge or belief. I understand that intentional misrepresentation in self-certifying that I fall within one or more of the COVID-19 categories is fraud and that I may be subject to criminal prosecution if I have been found to have committed fraud to receive Pandemic Unemployment Assistance benefits. I also declare under penalty of perjury that I am a U.S. citizen or national; or an alien in satisfactory immigration status and permitted to work by USCIS."*

16. From at least February 9, 2020, through at least October 26, 2020, GOUR resided in the County of Solano, in the Eastern District of California.

## SCHEME AND ARTIFICE TO DEFRAUD

17. Beginning on or about August 23, 2020, and continuing through at least October 26, 2020, in the State and Eastern District of California, and elsewhere, GOUR did knowingly devise, intend to devise, and participate in, with the intent to defraud, a material scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

18. The purpose of the scheme and artifice to defraud was to obtain money from the State of California and the United States by submitting fraudulent UI claims to EDD.

## MANNER AND MEANS

19. In furtherance of the scheme and artifice to defraud, the defendant used the following manner and means, among others:

20. On or about August 23, 2020, GOUR submitted an online application for UI benefits to EDD. GOUR filed the application in his own name, and provided information including his name, date of birth, Social Security Number, residence address, mailing address, email address, and purported employment status and history.

21. As part of this application, GOUR made several false representations including: (1) his last employer was "NA," which is an acronym commonly used to refer to the phrase "Not Applicable;" (2) his employment was first affected by COVID-19 on February 15, 2020; (3) his only employer within the last 18 months was a "Private Employer;" and (4) he worked for that employer for one month, during which the type of work he performed was "Customer Service."

22. In addition to this application, GOUR also submitted multiple DE 4581 forms. Because GOUR listed the date at which his employment was affected by COVID-19 as February 15, 2020, the first week that GOUR was eligible to receive UI benefits was the week of February 9, 2020. GOUR filled out and submitted DE 4581 forms which were backdated to the week of February 9, 2020. GOUR continued to file DE 4581 forms, each of which certified that he was unemployed and eligible to receive UI benefits, until the week of September 4, 2021.

23. In fact, GOUR was employed by the United States Postal Service (USPS) for the entire period between February 15, 2020, and August 01, 2020. GOUR was also employed by USPS for the entire period between October 8, 2020, and October 26, 2020. During these two periods, GOUR's position with USPS was as a mail carrier.

24. Nowhere on the forms that GOUR submitted to EDD during this period, including his initial application for UI benefits and the DE 4581 forms submitted for the periods between on or about February 15, 2020, and on or about October 26, 2020, did GOUR disclose his employment with USPS.

25. The initial application, associated DE 4581 forms, and subsequently filed DE 4581 forms contained false and fraudulent representations, including, without limitation, that GOUR was unemployed for the entire period from February 15, 2020, through August 1, 2020, and again from October 10, 2020, through October 24, 2020. GOUR was aware that these claims were false, in that he was actually employed for the majority of this period.

26. The false information that GOUR reported to EDD on the UI benefit application and DE 4581 forms caused EDD to approve and calculate the fraudulent UI benefits ultimately paid out, and was material and essential to EDD's decision to pay and continue to pay the UI benefits. EDD would have denied GOUR's UI benefit application if GOUR had disclosed that he was employed by USPS.

27. The false and fraudulent representations contained in the UI application and associated DE 4581 forms were material and essential to EDD's decision regarding whether to approve GOUR's UI claim and pay out UI benefits.

28. The UI benefits paid to GOUR included UI benefits administered under the CARES Act. Upon approval of GOUR's UI claim, EDD notified BofA, which issued GOUR a debit card and mailed it to the address provided on GOUR's application form. During this scheme, EDD periodically caused

additional UI funds to be wired into the BofA account associated with GOUR's debit card.

29. In carrying out the scheme, GOUR at all times material acted with the intent to defraud, including the intent to deceive and cheat.

30. GOUR's scheme and artifice to defraud caused the filing of fraudulent UI benefit claims that caused EDD and the United States to incur actual losses of at least $16,220.00.

## USE OF MAILINGS

31. On or about August 24, 2020 in the State and Eastern District of California, and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, GOUR knowingly caused, according to his direction, the following mail matter, namely an EDD debit card ending in 0104, in the name of BRANDON GOUR, administered by the Bank of America, to be placed in a post office and an authorized depository for mail matter and to be sent and delivered by the U.S. Postal Service and interstate mail carrier to Vallejo, California. All in violation of Title 18, United States Code, Sections 2 and 1341.

Dated: December 1, 2025

ERIC GRANT
United States Attorney

By: */s/ Charles Campbell*
CHARLES CAMPBELL
Assistant United States Attorney

# United States v. Brandon Michael Gour
## Penalties for Information

### COUNT 1:

VIOLATION: 18 U.S.C. § 1341 – Mail Fraud

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years